Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | |
| ) | Bankruptcy Case |
| JOEL ROBERT KNOWLING, ) | No. 09-40551-rld7 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| UNITED STATES TRUSTEE, ) | Adv. Proc. No. 10-03298-rld |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| JOEL ROBERT KNOWLING, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On August 9-10, 2011, I received evidence and heard testimony and argument at the trial ("Trial") of the United States Trustee's ("UST") Complaint for Denial of Discharge ("Complaint") to the debtor Joel Robert Knowling ("Mr. Knowling"). The parties previously had filed a Joint Pretrial Order ("Pretrial Order") that was entered on August 8, 2011. See Adversary Proceeding Docket No. 30. At the conclusion of the Trial, I took the matter under advisement.

Page 1 - MEMORANDUM OPINION

In deciding this case, I have considered carefully the testimony presented and the exhibits admitted at the Trial, as well as arguments presented, both in legal memoranda and orally. I further have taken judicial notice of the docket and documents filed in this adversary proceeding ("Adversary Proceeding") and in Mr. Knowling's main chapter 7[1] case, Case No. 09-40551-rld7 ("Main Case"), for purposes of confirming and ascertaining facts not reasonably in dispute. Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006). In addition, I have reviewed relevant legal authorities, both as cited to me by the parties and as located through my own research.

In light of that consideration and review, this Memorandum Opinion sets forth the court's findings of fact and conclusions of law under Civil Rule 52(a), applicable in this Adversary Proceeding under Rule 7052.

## Factual Background

Mr. Knowling has about twenty years' experience in repairs, purchases and sales of heavy equipment in the construction industry. He graduated from high school in 1986 and did not attend college, but he attended mechanic school. He got his first job in the equipment business in approximately 1988. After working for a succession of employers, including Ivy Equipment, Sky Reach, Viking Equipment Rentals and Power Rents, Mr. Knowling started his own proprietorship business to buy and

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 2 - MEMORANDUM OPINION

Case 10-03298-rld    Doc 35    Filed 10/20/11

sell heavy lift equipment in the spring of 2000, operating under the name "Columbia River Lift Equipment" ("CRLE"). CRLE was registered as a business name in the business registry of the Oregon State Corporation Division on June 11, 2007.

From approximately March 2000 through December 15, 2009, Mr. Knowling, dba CRLE, bought and sold used heavy equipment for the wholesale market. He operated his business from a leased office, shop and equipment yard property located on 92nd Avenue in Portland, Oregon ("Commercial Property").

Mr. Knowling operated his business as follows: He would locate and purchase items of heavy lift equipment, sometimes for cash and sometimes on terms, and would resell equipment inventory items at a mark-up he determined to be appropriate as soon as possible, sometimes before his own purchase invoice for the subject equipment became due. He started with a few thousand dollars, but as his business grew, he relied more and more for working capital on loans from private lenders at high rates of interest.

Mr. Knowling maintained records for his business on two computers and in organized folders containing copies of leases, promissory notes, tax records, bank statements, carbon copies of checks, stubs from cashier's checks, invoices to and from CRLE, and miscellaneous documents. At the time of his bankruptcy filing, Mr. Knowling's records were retained on the two computers and in twelve banker's boxes containing his document folders. Mr. Knowling maintained a single business checking account at U.S. Bank ("Account 9982") into which he deposited business checks, wire transfers and some cash. He drew from

Page 3 - MEMORANDUM OPINION

Case 10-03298-rld    Doc 35    Filed 10/20/11

sell heavy lift equipment in the spring of 2000, operating under the name "Columbia River Lift Equipment" ("CRLE"). CRLE was registered as a business name in the business registry of the Oregon State Corporation Division on June 11, 2007.

From approximately March 2000 through December 15, 2009, Mr. Knowling, dba CRLE, bought and sold used heavy equipment for the wholesale market. He operated his business from a leased office, shop and equipment yard property located on 92nd Avenue in Portland, Oregon ("Commercial Property").

Mr. Knowling operated his business as follows: He would locate and purchase items of heavy lift equipment, sometimes for cash and sometimes on terms, and would resell equipment inventory items at a mark-up he determined to be appropriate as soon as possible, sometimes before his own purchase invoice for the subject equipment became due. He started with a few thousand dollars, but as his business grew, he relied more and more for working capital on loans from private lenders at high rates of interest.

Mr. Knowling maintained records for his business on two computers and in organized folders containing copies of leases, promissory notes, tax records, bank statements, carbon copies of checks, stubs from cashier's checks, invoices to and from CRLE, and miscellaneous documents. At the time of his bankruptcy filing, Mr. Knowling's records were retained on the two computers and in twelve banker's boxes containing his document folders. Mr. Knowling maintained a single business checking account at U.S. Bank ("Account 9982") into which he deposited business checks, wire transfers and some cash. He drew from

Account 9982 payments for both his business and personal expenses.  Mr. Knowling never employed a bookkeeper or accountant to organize and manage the finances of his business, and he did not maintain a business ledger.  He never prepared any financial statements for his business: No balance sheets, no profit and loss statements, no accounts receivable aging reports.  While he frequently checked on the status of Account 9982, he operated day to day based on figures he juggled "in his head."  Based on the record of the Trial, it is apparent that Mr. Knowling's business focus was on cash flow.

Mr. Knowling's approach to taxes was unique in my experience.  He clearly recognized that he was obligated to file tax returns and to pay taxes.  However, he did not file any income tax returns for 2000 or 2001 forward, although he did request repeated extensions to file, and he paid income taxes only when he would receive a statement from the Internal Revenue Service ("IRS").  He testified that he never employed a tax accountant because he thought it would be "cost prohibitive."

Ms. Kristin Emminger testified as the IRS agent who was assigned postpetition the task of analyzing and determining Mr. Knowling's income tax obligations for the years 2006 through 2009.  In her amended report on Form 4549-A, Income Tax Discrepancy Adjustments, and Explanation of Changes ("Amended Report"), Ms. Emminger stated after reviewing Mr. Knowling's bank statements and expense invoices that, "The records are voluminous and are organized in such a way that reconstructing income or expenses will be burdensome for the government."  See Exhibit P, at p. 43.  Based on her review, Ms. Emminger ultimately concluded that Mr. Knowling's gross income for 2006 through 2009 was as

Page 4 - MEMORANDUM OPINION

follows:

|      |             |
|------|-------------|
| 2006 | $5,012,184  |
| 2007 | $3,505,603  |
| 2008 | $1,493,987  |
| 2009 | $  544,795  |

Exhibit P, at p. 42. In an earlier version of the 4549-A report, Ms. Emminger had estimated Mr. Knowling's gross income for 2006 through 2009 as follows:

|      |             |
|------|-------------|
| 2006 | $5,483.684  |
| 2007 | $3,882,603  |
| 2008 | $2,248,987  |
| 2009 | $  799,795  |

Exhibit A, at p. 82. On or about July 21, 2011, Ms. Emminger prepared a second amended report, reflecting further changes to gross receipts and business expenses.

Although Mr. Knowling included the gross income figures for 2007 through 2009 from the Amended Report in the latest amended version of his Statement of Financial Affairs (see Exhibit E, at p. 1), he disputes the IRS computations of his gross income and expenses for 2009, the year of his bankruptcy filing, and has appealed the IRS determinations.[2]

The accounting firm of Henderson Bennington Moshofsky, P.C. was employed by the chapter 7 trustee for accounting work and preparation of

---

[2] In the Amended Report, the IRS concluded that Mr. Knowling's business expenses exceeded his gross income by $233,628 in 2008 and $429,200 in 2007, resulting in $0 net income for each of those years. Mr. Knowling apparently has not appealed those conclusions and reported them in his amended Statement of Financial Affairs. See Exhibit E, at p. 1.

Page 5 - MEMORANDUM OPINION

tax returns. See Main Case Docket No. 58. Accountant Roger Henderson testified that he reviewed bank statements, checks and computer records to try to account for what happened in Mr. Knowling's business from 2006 to 2009. He testified that he prepared the report included in Exhibit 10 as a "first stab" at estimating Mr. Knowling's cash flow for 2007 through 2009. He further testified that it took him approximately 42 hours to put the Exhibit 10 report together, but another 40-60 hours might be needed to reconcile inventory and other accounting issues. In Exhibit 10, Mr. Henderson estimated Mr. Knowling's total gross income for 2007 through 2009 as follows:

| | |
|---|---|
| 2007 | $3,915,070.75 |
| 2008 | $2,357,382.01 |
| 2009 | $ 867,504.96 |

See Exhibit 10, at pp. 1, 5 and 10.

Ms. Tammy Combs, the UST's bankruptcy analyst, further analyzed Mr. Knowling's financial records and information. She noted generally that a debtor's statements that income for relevant years is "unknown" hamper her ability to analyze the financial condition of the debtor. She reviewed and analyzed Mr. Knowling's financial records, including bank statements, checks, invoices and receipts, and Ms. Emminger's reports, but admitted that she could not determine Mr. Knowling's financial condition with any accuracy. Her analysis of deposits into the CRLE business account v. CRLE sales invoices for 2007 through December 18, 2009 is as follows:

| | Total Deposits | Total Sales Invoices |
|---|---|---|
| 2007 | $4,366,070.75 | $2,032,726.24 |
| 2008 | $2,401,192.76 | $1,429,619.19 |
| 2009 | $ 881,497.81 | $ 288,535.00 |

Page 6 - MEMORANDUM OPINION

Exhibit 33, at p. 1.

Mr. Knowling filed his chapter 7 bankruptcy petition on December 18, 2009. His was a "short" filing, that is, Mr. Knowling did not file his schedules and Statement of Financial Affairs with his bankruptcy petition. See Main Case Docket No. 1. On December 21, 2009, the court entered an order directing Mr. Knowling to file his schedules and Statement of Financial Affairs within 14 days. See Main Case Docket No. 5. On December 22, 2009, Mr. Knowling filed a motion to extend time to file the subject documents through January 15, 2010, which motion was granted by order entered on December 29, 2010. See Main Case Docket Nos. 6 and 9. Mr. Knowling filed his schedules and his Statement of Financial Affairs on January 15, 2010. See Main Case Docket No. 16.

Mr. Knowling signed and filed his Statement of Financial Affairs under the following declaration: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." In response to question one of his Statement of Financial Affairs, Mr. Knowling reported gross income from his employment, trade or profession, or from the operation of his business for 2007, 2008 and 2009 through December 18, 2009, as follows: "Unknown. [CRLE] took out various loans from private parties and sold construction equipment. Debtor's books and records are incomplete."

Mr. Knowling filed his amended Statement of Financial Affairs on July 20, 2011, less than 60 days prior to the start of the Trial. See Main Case Docket No. 133.

///

## Jurisdiction

I have jurisdiction to decide the claims at issue in this Adversary Proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(J).

## Discussion

I. Generally Applicable Legal Standards

One of the primary objectives of the Bankruptcy Code is to provide a "fresh start" to debtors who are overwhelmed by debts they cannot pay.

> This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."

Grogan v. Garner, 498 U.S. 279, 286 (1991) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). Accordingly, I start from the position that the provisions of the Bankruptcy Code under which a debtor's discharge can be denied are construed strictly in favor of the debtor.

> A denial of a discharge is an act of mammoth propositions, and must not be taken lightly. In light of this gravity, this Court and many others have stated that Section 727 must be construed liberally in favor of the debtor and against the objector.

In re Goldstein, 66 B.R. 909, 917 (Bankr. W.D. Pa. 1986). See First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986); Devers v. Bank of Sheridan (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985).

The plaintiff, such as the UST here, in an adversary proceeding seeking to deny the debtor a discharge, bears the burden of proving each

Page 8 - MEMORANDUM OPINION

element of its § 727 claim by a preponderance of the evidence. Grogan v. Garner, 498 U.S. at 289; Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

II. 727 Claims at Issue

In the Complaint the UST stated claims for relief under §§ 727(a)(2), (a)(3), (a)(4)(A) and (a)(5). In the Pretrial Order, the UST continued to assert claims under all the same four subsections of § 727, but the § 727(a)(4)(A) claim was limited to claims that Mr. Knowling had knowingly and fraudulently made false statements in his Statement of Financial Affairs when he stated that his gross income for 2007, 2008 and 2009 was "unknown," and that he did not correct those statements. Accordingly, I conclude that the UST has abandoned its § 727(a)(4)(A) claims that Mr. Knowling lied at his § 341(a) meeting when he stated that all monies received for business purposes were deposited in Account 9982, and that he failed to disclose his access to and use of a bank account at the Heritage Bank of Nevada. I treat the Pretrial Order as limiting the scope of claims to be determined at the Trial. See Civil Rule 16(d), applicable in this Adversary Proceeding under Rule 7016.

III. Judgment on Partial Findings

Following the presentation of the UST's case, I granted Mr. Knowling's oral motion to dismiss the UST's claims under §§ 727(a)(2) and (a)(4)(A). The UST's § 727(a)(2) claim was that Mr. Knowling concealed property with intent to hinder, delay or defraud creditors and/or the chapter 7 trustee within one year prior to his bankruptcy filing. No evidence was presented of such concealment. As noted above, the UST's

Page 9 - MEMORANDUM OPINION

§ 727(a)(4)(A) claims essentially were that Mr. Knowling had "knowingly and fraudulently" made false statements in his Statement of Financial Affairs when he stated that his gross income for 2007, 2008 and 2009 was unknown. After hearing the testimony of Ms. Emminger, Mr. Henderson and Ms. Combs to the effect that after all of their best efforts to examine and analyze Mr. Knowling's financial records, they could come up with no more than estimates of Mr. Knowling's gross income for those years in amounts that varied widely among the three of them, I conclude that Mr. Knowling's statements in his Statement of Financial Affairs that his gross income for 2007, 2008 and 2009 was unknown were fundamentally accurate. Accordingly, I find that the UST did not meet its burden of proof to prevail on its §§ 727(a)(2) and (a)(4)(A) claims, and Mr. Knowling is entitled to a judgment of dismissal on those claims under Civil Rule 52(c), applicable under Rule 7052.

IV. <u>727(a)(3)</u>

Under § 727(a)(3), a debtor may be denied a discharge if, "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." The purpose of § 727(a)(3) "is to make discharge dependent on the debtor's true presentation of his financial affairs." <u>Caneva v. Sun Communities Operating Limited Partnership (In re Caneva)</u>, 550 F.3d 755, 761 (9th Cir. 2008). See <u>Meridian Bank v. Alten</u>, 958 F.2d 1226, 1230 (3d Cir. 1992) ("The statute . . . ensures that the trustee and creditors are supplied

Page 10 - MEMORANDUM OPINION

Case 10-03298-rld   Doc 35   Filed 10/20/11

with dependable information on which they can rely in tracing a debtor's financial history.").

The plaintiff in a § 727(a)(3) case bears the burden of proving by a preponderance of the evidence that (1) the debtor failed to maintain and preserve adequate records, and (2) such failure makes it impossible to determine the debtor's financial condition and material business transactions. Landsdowne v. Cox (In re Cox) ("Cox II"), 41 F.3d 1294, 1296 (9th Cir. 1994). As opposed to many of the other provisions for denial of discharge under § 727(a), the plaintiff with respect to a § 727(a)(3) claim is not required to establish that the debtor's failure to maintain adequate books and records was "knowing" or "fraudulent." However, Section 727(a)(3) does not require debtors to maintain immaculate books of account either. Rhoades v. Wikle, 453 F.2d 51, 53 (9th Cir. 1971).

> Rather, the debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past."

In re Caneva, 550 F.3d at 761 (quoting Rhoades v. Wikle, 453 F.2d at 53). Evidence that the debtor did not maintain journals, ledgers or other books of account is relevant. Burchett v. Myers, 202 F.2d 920, 923 (9th Cir. 1953).

Once the plaintiff in a § 727(a)(3) adversary proceeding has made a prima facie case, the evidentiary burden shifts to the debtor defendant to establish that the absence of adequate financial records is justified. Cox II, 41 F.3d at 1296.

Section 727(a)(3) cases are necessarily fact dependent. "What

Page 11 - MEMORANDUM OPINION

constitutes adequate books, documents, and records must be decided on a case-by-case basis, depending on the Debtors' business operations and sophistication." See First Security Bank of Helena v. Hirengen (In re Hirengen), 112 B.R. 382, 385 (Bankr. D. Mont. 1989), and cases cited therein. Most debtors in bankruptcy are not great financial record keepers. In fact, many debtors are in bankruptcy because they don't have an adequate grasp or records of their financial transactions. Accordingly, § 727(a)(3) is not appropriately used to deny a discharge to inexperienced business operators who through inadvertence, lack of competence, or both, maintain less than pristine financial records. However, the Bankruptcy Code does not condone a default in maintaining and preserving records from which basic information regarding a debtor's financial condition during the years immediately preceding the debtor's bankruptcy filing can be determined. See, e.g., Stanley v. Hoblitzell (In re Hoblitzell), 223 B.R. 211, 216 (Bankr. E.D. Cal. 1998):

> Given the complexity of the defendant's business dealings, his lack of records is astounding. When challenged regarding this on cross-examination, he stated that he was not a "detail" person.

In light of the foregoing principles and reality-based assessments, my approach to § 727(a)(3) cases generally is to give the benefit of the doubt to financial records challenged debtors. However, there is a limited subset of cases where the debtor's financial records are so inadequate, incomplete and/or unenlightening that denial of discharge under § 727(a)(3) is appropriate, and I ultimately conclude that this is one of those rare cases for the following reasons.

The bankruptcy system is dependent on voluntary disclosures to

Page 12 - MEMORANDUM OPINION

function.  In this district alone, 12,424 bankruptcy cases were filed in 2008, and the figure for 2009 was 18,059.  That is why the statements made by a debtor in the Statement of Financial Affairs are made under penalty of perjury (see Rule 1008), and that is why § 727(a)(3) was written without a requirement that a debtor's failure to maintain adequate financial records be "knowing" or "fraudulent."

In this Adversary Proceeding, I have evidence that the IRS, the accountant for the chapter 7 trustee and the UST's financial analyst all have spent many hours sorting through Mr. Knowling's bank records, invoices and other financial records in efforts to determine Mr. Knowling's income and expenses for the years preceding his bankruptcy filing, and none of them has arrived at results that they can be confident are accurate.  Certainly, Mr. Knowling does not agree with any of them.

The problems with determining with any accuracy Mr. Knowling's financial condition during the periods leading up to his bankruptcy filing, highlighted in this Adversary Proceeding, result in large part from Mr. Knowling's failure to create and maintain any general ledgers or financial statements providing periodic accounts of his income and expenses.  However, I recognize that the creation and maintenance of such records is not a requirement for obtaining a discharge in bankruptcy, and their absence does not automatically support a denial of discharge under § 727(a)(3).

The UST argues that Mr. Knowling "deliberately kept his income 'unknown' to avoid paying taxes and to minimize his liability."  See UST's Trial Memorandum, Adversary Proceeding Docket No. 23, at p. 1.

Page 13 - MEMORANDUM OPINION

That argument has the ring of truth. Mr. Knowling knew that he was required to file federal income tax returns each year; yet, during the entire period that he operated his CRLE proprietorship business, he filed no federal income tax returns, instead repeatedly requesting extensions, and only paid the IRS when presented with a bill.

Based on the evidence presented at the Trial, Mr. Knowling's business model was fundamentally flawed. The Trial record reflects that CRLE's business grew to encompass transactions in the millions of dollars annually, but Mr. Knowling relied on private investor loans at very high interest rates for working capital. Exhibit H, submitted by Mr. Knowling, is illustrative. Pages 1 and 2 of Exhibit H is a promissory note ("Promissory Note") from Mr. Knowling to Machinery Connection/Steve Schimmel, dated June 3, 2009. The Promissory Note reflects that Mr. Knowling accepted a wire transfer of $55,000 from Mr. Schimmel on June 3, 2009, to be repaid in full with an additional $10,000 return on or before July 15, 2009. In other words, for a loan of $55,000 for a maximum term of 42 days, by my calculations, Mr. Schimmel was entitled to an annual rate of return of approximately 158% on his loan to Mr. Knowling under the Promissory Note. A business dependent for working capital on such loan transactions could not be sustained long-term. When construction activity contracted in 2008 and 2009, the CRLE business failed, and Mr. Knowling sought protection in bankruptcy.

However, while the CRLE business lasted, Mr. Knowling apparently had a good ride. Based upon his preliminary review of bank and computer records from Mr. Knowling's business, Mr. Henderson concluded that Mr. Knowling took draws of at least $304,000 in 2007,

Page 14 - MEMORANDUM OPINION

$216,400 in 2008, and $60,566 in 2009 (while the bottom was falling out of the CRLE business) from Account 9982, but it is unclear exactly what additional financial benefits Mr. Knowling took from the CRLE business. See Exhibit 10, particularly at pp. 1, 5 and 10.

In any event, based on the Trial record, I find that Mr. Knowling did not prepare and maintain adequate financial records from which his financial condition during the three years preceding his bankruptcy filing can be determined, and the UST has met its burden of proof to establish a prima facie case under § 727(a)(3).

The burden then shifts to Mr. Knowling to justify his lack of such financial records. "Justification for [a] bankrupt's failure to keep or preserve books or records will depend on . . . whether others in like circumstances would ordinarily keep them." In re Caneva, 550 F.3d at 763 (quoting Cox II, 41 F.3d at 1299). Relevant, nonexclusive factors to consider in determining justification include: 1) the debtor's intelligence and educational background; 2) the debtor's experience in business; 3) the extent of the debtor's involvement in the business under consideration; 4) the debtor's reliance on others to prepare and maintain financial records; and 5) any record keeping duties required by law. See Cox v. Lansdowne (In re Cox) ("Cox I"), 904 F.2d 1399, 1403 n.5 (9th Cir. 1990).

Mr. Knowling's primary justification for his failure to maintain financial records adequate for the chapter 7 trustee and the UST to determine his financial condition prepetition is his limited education. As a high school graduate with some training as a mechanic, I recognize that Mr. Knowling was not trained as an accountant, and he

Page 15 - MEMORANDUM OPINION

personally could not prepare financial statements and accounting records like the CFO of a Fortune 500 company.  However, he impressed me during the course of his testimony as reasonably intelligent.  He had approximately 20 years' experience in the construction equipment business prior to his bankruptcy filing.  He recognized that he had an obligation to file income tax returns during the period that he operated the CRLE proprietorship business, and he chose not to file them.  Indeed, while he did maintain a large volume of business records, it is questionable whether he ever maintained business records that would allow him or anyone else to prepare his tax returns accurately.

Mr. Knowling took compensation annually in the hundreds of thousands of dollars from the CRLE business, at least prior to 2009; yet, he made the choice not to hire any bookkeeping or accounting staff.  He ran the CRLE business entirely on his own.  He likewise chose not to retain the services of a tax accountant because such services would be "cost prohibitive."  He made conscious choices not to retain the services that were required for the preparation of periodic financial reports that would have allowed the chapter 7 trustee and the UST to make determinations readily as to his financial condition in the years preceding his bankruptcy filing. Those decisions have consequences.

Based on the foregoing analysis of the Trial record, I conclude that Mr. Knowling's failure to maintain adequate financial records was not justified in the circumstances of this Adversary proceeding.  Accordingly, I conclude that Mr. Knowling must be denied a discharge under § 727(a)(3).

V.  <u>727(a)(5)</u>

Having fully decided the Adversary Proceeding in the UST's favor on its claim for relief under § 727(a)(3), I do not need to reach the UST's claim for relief under § 727(a)(5), and I decline to do so.

## Conclusion

Based upon my review of the evidence and testimony presented at the Trial and relevant legal authorities, I conclude that the UST has established its claim under § 727(a)(3) by a preponderance of the evidence, and Mr. Knowling has failed to establish a defense based on justification.  Accordingly, I conclude that a discharge will be denied to Mr. Knowling.  All other claims stated by the UST in the Complaint and pretrial order will be dismissed.  Ms. Popperl should prepare and submit a form of judgment consistent with this Memorandum Opinion within ten (10) days following the date of its entry.

###

cc:     Heather E. Harriman
        M. Vivienne Popperl